CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
12/18/2018
JULIA C. DUDLEY, CLERK
BY: S/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| JACQUELINE DAWN STEPP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 5:18-cv-00052 |
| ) | |
| U.S. BANK NATIONAL ASSOCIATION ) | By: Elizabeth K. Dillon |
| and ) | United States District Judge |
| ALG TRUSTEE, LLC, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

In her lawsuit, plaintiff Jacqueline Dawn Stepp asserts that defendant U.S. Bank National Association (the Bank)[1] improperly foreclosed on her home. The gist of Stepp's complaint is that the Bank failed to comply with regulations applicable to her loan, promulgated by the Department of Housing and Urban Development (HUD) and incorporated into her deed of trust. Specifically, she contends that the Bank failed to offer, attempt, or conduct a face-to-face meeting with her before foreclosing on her property. Both defendants have moved to dismiss, with defendant ALG Trustee, LLC simply joining in the motion filed by the Bank.[2] (Dkt. Nos. 5, 7.)

The Bank asserts two arguments in support of dismissal. First, it contends that Stepp lacks standing to assert this claim because, during her bankruptcy proceedings, she did not

---

[1] The complaint erroneously names the first defendant as "U.S. Bank Trust, National Association."

[2] The case was initially filed by Stepp in the Circuit Court for the City of Richmond. After it was removed, Stepp filed an amended complaint. While the case was still pending in the Eastern District of Virginia, defendants filed their motions to dismiss. The case was then transferred here, and the briefing was completed. Although the parties initially requested a hearing, they subsequently withdrew their request for a hearing and submitted the motions on the written briefs.

identify the claim and it was never abandoned by the estate. Thus, according to the Bank, the claim remains the property of the estate. Second, the Bank contends that the face-to-face requirement cannot support a cause of action here because it applies only where a lender has a "branch office" within 200 miles of the mortgaged property, and the Bank's only office within 200 miles of Stepp's home is not open to the public, does not perform any mortgage-related functions, and is therefore not a qualifying "branch office."

For the reasons set forth below, the court concludes that Stepp has standing to pursue her claims. Nonetheless, her claim is subject to dismissal because the "Bank" had no branch office within 200 miles of her home and so was exempt from the face-to-face meeting requirement. It will therefore grant defendants' motions to dismiss. The court further concludes that Stepp's proposed second amended complaint, which she offered as an alternative to possible dismissal but which contains new allegations that are relevant only to standing, is unnecessary in light of the court's ruling. So, her motion for leave to file that document (Dkt. No. 32) will be denied as moot.

I.  BACKGROUND

A.  **Facts Concerning the Mortgage Loan and Subsequent Foreclosure**[3]

Stepp obtained a mortgage loan in October 2010 to purchase a home in Page County, Virginia. The loan was a Fair Housing Act (FHA) loan governed by FHA regulations of HUD. The loan was evidenced by a note and secured by a deed of trust, both signed by Stepp. The original lender later assigned the note to the Bank, which has remained the note holder. (Am. Compl. ¶¶ 3, 7–8, Dkt. No. 3.)

---

[3] The court takes these facts, which it assumes to be true, from Stepp's amended complaint. *See Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

2

The note itself prohibited an acceleration of the note and prohibited foreclosure unless there was compliance with the FHA regulations. (*Id.* ¶ 6.)[4] The regulations require that certain conditions be met prior to the initiation of foreclosure proceedings. 24 C.F.R. § 203.606(a). One of the conditions is that a mortgagee have a "face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid." *Id.* § 203.604. The requirement of an offer of a face-to-face interview requires a lender, "at a minimum," to "(a) send a letter offering such a meeting; and (b) go to the door of the borrower's home for the purpose of offering such a meeting." *Id.* § 203.604(d). Additionally, Stepp cites to 24 C.F.R. § 203.605(a), which requires the mortgagee, "[b]efore four full monthly installments due on the mortgage have become unpaid," to "evaluate on a monthly basis all of the loss mitigation techniques" provided at § 203.501 and take appropriate loss mitigation actions. (Am. Compl. ¶¶ 11–14.)[5]

Stepp alleges that the Bank never offered or conducted a face-to-face meeting. She acknowledges that the regulations exempt lenders from the face-to-face requirements where neither the holder of the note nor the servicer of the loan has a branch office within 200 miles of the residence which is collateral for the loan, but she alleges that the exemption is inapplicable here because the Bank has a branch office within 200 miles of her home. (*Id.* ¶¶ 15–18.)

Stepp fell behind on her mortgage payments and was more than three months in arrears on the note. The Bank subsequently instructed defendant ALG Trustee to foreclose on the home. After a purported foreclosure of the home, at which the Bank was the high bidder, the Bank then

---

[4] The Supreme Court of Virginia has held that, despite the fact that the FHA regulations do not provide a private cause of action, Virginia law allows a breach of contract claim for violation of those regulations where the deed of trust expressly incorporates them. *Mathews v. PHH Mortg. Corp.*, 724 S.E.2d 196, 202–03 (Va. 2012).

[5] Although Stepp cites to 24 C.F.R. § 203.605(a) and § 203.501 in the background section of her complaint, she does not allege that the Bank failed to comply with these regulations.

3

conducted a purported internet auction of the home. After an investor claimed to have made the high bid and demanded that Stepp leave the home, Stepp refused. Then, the Bank stated it would have a second internet auction. It also made negative reports about Stepp's credit to credit reporting agencies. (*Id.* ¶¶ 16, 19–51.)[6]

The amended complaint asserts that, because of the Bank's failure to satisfy the face-to-face regulatory requirement, the purported foreclosure was void or, alternatively, was voidable. Stepp asks the court to rescind the foreclosure and to award other damages she has incurred as a result of the Bank's actions. (*Id.* ¶¶ 53–57.)

## B. Stepp's Bankruptcy[7]

Because Stepp's bankruptcy case is relevant to the motion to dismiss, the court discusses it briefly. In October 2016, Stepp filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Virginia. *In re Dawn Jacqueline Stepp*, Case No. 16-50960 (Bankr. W.D. Va.). After the Bank sought relief from the automatic stay, Stepp filed an amended schedule in which she listed a "[p]otential interest in civil suit against" the Bank. (Dkt. No. 8-2.) In a letter to the bankruptcy judge, which was docketed as an "answer" to the request for relief from the stay, Stepp alleged that she had found instances of fraud in her mortgage documents, she mentioned pyramiding late fees, dual tracking and robo-

---

[6] The numbering of the paragraphs in the amended complaint omits paragraphs 22 through 44 and instead jumps from paragraph 21 to paragraph 45.

[7] The court is permitted to take judicial notice of court filings in another case, and courts will frequently take such notice where the records pertain to a related case. *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.") (citation omitted); *Stephens v. Cty. of Albermarle*, No. 3:04-cv-81, 2005 WL 2076417, at *3 (W.D. Va. Aug. 26, 2005), amended in part, No. 3:04-cv-81, 2005 WL 3533428 (W.D. Va. Dec. 22, 2005) (explaining that judicial notice of court records is often taken and is particularly appropriate where the records pertain to a related case). Moreover, as discussed in Section II.A., on a factual challenge to the court's jurisdiction, such as that raised here, the court may consider documents outside of the complaint without converting the motion into one for summary judgment.

signing, and she also alluded to "violation of HUD regulations among many other issues." (Dkt. No. 8-3.) She did not specifically reference the regulation requiring a face-to-face offer or meeting.

The trustee later docketed a "Report of No Distribution," in which he stated that there was no property available for distribution from the estate and that the estate had been fully administered. (Dkt. No. 8-4.) That entry includes a notation stating "Claims Asserted: Not Applicable." (*Id.*) From this, Wells Fargo contends that the trustee believed Stepp had not identified any claims. The bankruptcy was discharged on January 23, 2018.

## II. DISCUSSION

### A. Standards of Review

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6). The standards for each are similar. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In determining whether Stepp has met this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and any documents incorporated into or attached to it. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's

favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments,'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

The other portion of the Bank's motion challenges standing, which courts often treat as a defect in subject matter jurisdiction and thus address under Rule 12(b)(1). *Richardson v. Mayor & City Council of Baltimore*, No. 13-cv-1924, 2014 WL 60211, at *1–2 (D. Md. Jan. 7, 2014) (collecting authority). The plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). In deciding a Rule 12(b)(1) motion that is a factual challenge, rather than a facial challenge based only on the allegations in the complaint, "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id*. (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). It must, however, "view[ ] the alleged facts in the light most favorable to the plaintiff, similar to an evaluation pursuant to Rule 12(b)(6)." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). Dismissal under Rule 12(b)(1) is proper "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R.*, 945 F.2d at 768).

## B. Stepp Has Standing

The Bank's first argument is that Stepp lacks standing to bring the claim against it because the claim is the property of her bankruptcy estate and was not abandoned by the estate.

6

(Mem. Supp. Mot. Dismiss 6–8, Dkt. No. 8.)  Thus, the Bank contends that the claim is still property of the estate and Stepp has no standing to assert it.

"A trustee in bankruptcy succeeds to all rights of the debtor, including the right to assert any causes of action belonging to the debtor." *In re Beach First Nat'l Bancshares, Inc.*, 702 F.3d 772, 776 (4th Cir. 2012) (citing *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir.1999)).  Thus, when she filed for bankruptcy, Stepp's claim against the Bank became the property of the estate.  *See id.*  In a Chapter 7 case, as opposed to a Chapter 13 case, the debtor has no standing to assert a claim that is the property of the estate.  *Wilson v. Dollar General Corp.*, 717 F.3d 337, 343 (4th Cir. 2013).

It is clear from the bankruptcy case docket that the trustee never expressly or formally abandoned the claim, nor did he administer it.  Thus, it could only have been abandoned by operation of law, which occurs when an asset is scheduled and not "otherwise administered" at the time the case is closed.  *Stanley v. Sherwin-Williams Co.*, 156 B.R. 25, 26 (W.D. Va. 1993) (citing 11 U.S.C. § 554(c)).  In such a case, the property reverts back to the debtor.  However, if a cause of action was not formally abandoned and was *not* scheduled, then it is not abandoned by operation of law and remains property of the estate.  *Id.*

The Bank urges that application of these principles leads to the conclusion that Stepp's claim against it remains property of the estate.  Specifically, it contends that she failed to schedule the claim and that it was never formally abandoned, and so it remains property of the estate.

Stepp does not dispute the general legal principles cited by the Bank, but she disputes the Bank's urged application of them to the facts here.  Primarily, she contends that she listed the

7

potential claim against the Bank as an asset, and she notes that the trustee abandoned all of her listed assets. Thus, she asserts that the claim was abandoned and she has standing to assert it.

The court agrees with Stepp on this issue and concludes that the factual premise of the Bank's argument is incorrect. If Stepp had wholly failed to disclose any claim against the Bank, the Bank's conclusion would be warranted. Stepp's amended schedules, however, did list "a potential interest in civil suit against U.S. Bank Home Mortgage." (Dkt. No. 8-2 at 6.) She elaborated on that claim in some detail in her "answer," which was also filed prior to the closing of the bankruptcy case and the discharge. The question then, is whether she identified the claim with sufficient detail to deem it scheduled. If so, it clearly was neither administered nor formally abandoned and so was abandoned by operation of law.

Neither party cites to any cases describing the level of specificity with which a potential lawsuit must be listed on a bankruptcy schedule. The court's own research has led it to several decisions that address this issue, although those decisions recognize that the inquiry is fact-specific:

> "[F]ew courts have addressed the level of specificity with which debtors must describe assets in order to comply with 11 U.S.C. § 521[a](1)." *Tilley* [*v. Anixter Inc.*, 332 B.R. 501, 509 (D. Conn. 2005)]. As one district court noted, "[t]here are ... no bright-line rules for how much itemization and specificity is required" – rather, "[w]hat is required is reasonable particularization under the circumstances." [*In re Mohring*, 142 B.R. 389, 395 (E.D. Cal. 1992)]. In this regard, "'it would be silly to require a debtor to itemize every dish and fork,'" but "'every bankrupt must do enough itemizing to enable the trustee to determine whether to investigate further.'" *Id.* (quoting *Payne v. Wood*, 775 F.2d 202, 205-07 (7th Cir. 1985)).

*Romeo v. FMA All., Ltd.*, No. 15-cv-6524, 2016 WL 3647868, at *6 (E.D.N.Y. June 30, 2016).

*See also Hermann v. Hartford Cas. Inc. Co.*, 675 F. App'x 856, 860–61 (10th Cir. 2017)

8

("Although the duty of disclosure is clear, [11 U.S.C. § 521] does not address the degree of detail required.").

As another court described it, the description of a claim on a debtor's schedule is sufficiently scheduled if that description

> puts the bankruptcy trustee on inquiry notice, that is, the trustee has enough information "to determine whether to investigate further." *Romeo v. FMA All., Ltd.*, No. 15-cv-6524, 2016 WL 3647868, at *6 (E.D.N.Y. June 30, 2016) (quoting *In re Furlong*, 660 F.3d 81, 87 (1st Cir. 2011)); 4 Collier on Bankruptcy ¶ 521.06[1] ("The purpose of the schedules is to give interested parties sufficient information that a reasonable investigation by the trustee would reveal the claim ultimately asserted.") *Bejarano v. Bravo! Facility Servs., Inc.*, 251 F. Supp. 3d 27, 31 (D.D.C. Apr. 24, 2017).

*Taylor v. Fin. Recovery Servs., Inc.*, 252 F. Supp. 3d 344, 350 (S.D.N.Y. 2017), *aff'd*, 886 F.3d 212 (2d Cir. 2018) (some citations omitted).

The fact-specific nature of the inquiry is highlighted by the analysis in *Romeo*, in which the court reached different results with regard to two different plaintiffs with identical disclosures. Specifically, the *Romeo* court found that one plaintiff had not adequately disclosed a claim where he disclosed on his amended schedules only one "Possible Fair Debt Collection Claim," did not identify any possible defendant to any such claim, and offered no supporting details. At the time he identified that claim, however, he had two pending Fair Debt Collection Practices Act (FDCPA) actions, both filed shortly after commencing his bankruptcy proceeding, including one in the same district where the bankruptcy case was pending. *Id.* at *9.

By contrast, the *Romeo* court found that another debtor in the same case—with the same description of his claim and same omissions—had properly disclosed because he only had one claim, and he had discontinued his lawsuit in order to amend his Chapter 7 petition to include the claim. The failure to identify a putative defendant was not troubling to the court, in part because

9

it was an FDCPA claim and the statutory damages were limited to $1,000, regardless of who the defendant was. *Id.* at *11–12.

Both the cases discussed in *Romeo* and subsequent cases that cite to *Romeo* lead the court to conclude that the disclosure here was sufficient to deem it adequately disclosed by Stepp. Many of those cases found that a listed claim against a specific entity—or even no entity at all, in the case of FDPCA claims—was sufficient. In *Taylor*, for example, the court concluded that the debtor had adequately disclosed her FDCPA claim where she had included on her schedule "Possible FDCPA claims" with a value of $1,000. Thus, the claim was "abandoned by the estate and reverted back to her at the close of her bankruptcy case." 252 F. Supp. 3d at 350.

Other cases are in accord. *See, e.g.*, *Nielsen v. Dickerson*, No. 98-cv-5909, 1999 WL 350649, at *6 (N.D. Ill. May 20, 1999) (holding debtor had standing to pursue a post-petition claim against a debt collector where her schedules identified an FDCPA claim against a law firm, but she later commenced a class action against the law firm *and the debt collector*, even though she had not previously identified the debt collector); *Eun Joo Lee v. Forster & Garbus LLP*, 926 F. Supp. 2d 482, 489–90 (E.D.N.Y. 2013) (reaching same result and noting that "a minimal investigation by the trustee would have revealed that [the debt collector] was a potential defendant in any such [] action"); *Roth v. Solomon & Solomon, P.C.*, No. 17-cv-0868, 2018 WL 718402, at *5 (E.D.N.Y. Feb. 5, 2018) (concluding that a disclosure valuing "FDCPA Actions" at $2,000 was adequate, despite the fact that the debtor had four separate actions pending and did not identify the specific defendants).

The cases where the disclosure was not sufficient, moreover, typically involved descriptions of lawsuits that were more vague than Stepp's disclosure or disclosures that provided information that was false or incorrect, not just vague. *E.g., Lewis v. Portfolio*

10

*Recovery Assocs., Ltd.*, No. 15-cv-2412, 2015 U.S. Dist. LEXIS 153943, at *7 (D.N.J. Nov. 12, 2015) (finding disclosure inadequate where debtor listed only "lawsuits" valued at $5,000); *Lake v. Cristol* (*In re Lake*), 49 B.R. 715, 716–17 (Bankr. S.D. Fla. 1985) (holding that a disclosure was inadequate where a civil lawsuit had been pending for three months at the time the petition was filed, but the debtor stated only "intend to file lawsuit in Miami regarding my car that was stolen July 1981 by Auto Recovery"); *Romeo*, 2016 WL 3647868, at *9 (where debtor referenced only a single claim, but had two actions pending at that time, the disclosure was inadequate).

The results in the foregoing cases suggest to the court a certain general pattern: where there are misleading descriptions and inaccuracies, courts are more likely to find an inadequate disclosure. Where, however, there are no inaccuracies and an amount of information that puts a trustee on inquiry notice, the disclosures will generally be deemed adequate. For example, in finding the debtor's disclosure adequate, the *Roth* court relied, in part, on both the ease with which the trustee could have found the potential defendants by reviewing collection letters and the court's finding that there was no evidence that plaintiff was attempting to deceive the trustee about the nature of her claims. *Roth*, 2018 WL 718402, at *5.

The court concludes that the disclosure here falls in the latter category: Stepp's description of her claim provided the trustee with inquiry notice of its nature, and there is no evidence she was attempting to mislead or deceive the trustee. Stepp did not hide the claim; her amended schedules identify a potential civil suit and a potential defendant. She subsequently provided additional detail to the bankruptcy court concerning her allegations that the foreclosure proceedings against her home should not have occurred or were handled improperly. The court

11

concludes that this description provided sufficient notice to the trustee to deem the claim scheduled.

The Bank suggests, though, that Stepp was under some obligation to state the specific bases or grounds for her claim in her schedules, *i.e.*, violation of the face-to-face requirement (as opposed to a general reference to HUD requirements or other violations). But it cites to nothing for that proposition. Moreover, at least one court has seemingly rejected such a requirement. In *Bejarano*, the court concluded that a debtor's disclosure of a "pending employment discrimination claim" was sufficient to encompass her FMLA claim, as well as other employment discrimination claims. 251 F. Supp. 3d at 33. Accordingly, the court finds that Stepp's claim was abandoned by operation of law by the trustee and reverted back to Stepp upon the close of the bankruptcy case. Stepp has standing to pursue her claims against the Bank.[8]

**C. The Bank Does Not Have a "Branch Office" Within 200 Miles of Stepp's Home**

Having found that Stepp has standing to pursue her claim, the court turns to the Bank's second argument, which is that its Richmond branch is not a "branch office" as that term is used in the applicable regulation, and so the Bank was exempt from the face-to-face requirement in 24 C.F.R. § 203.604. That regulation requires a mortgagee to have "a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid." A mortgagee is exempted from this requirement, however, if any one of certain exceptions apply, including if "[t]he mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either." 24 C.F.R. § 203.604(c)(2), (d).

---

[8] In the alternative, Stepp argues that her claim accrued post-petition and thus is not part of the estate. (Opp'n 3, Dkt. No. 22.) The Bank counters that a claim that arises during the pendency of the bankruptcy proceedings must be disclosed and scheduled, or it is abandoned. (Reply 2 & n.3.) In light of the court's ruling that the claim was properly scheduled, it need not address this issue.

12

Whether the Bank qualifies for the exception in this case turns on the definition of the "branch office." Taking the facts in the complaint as true and noting the admissions by plaintiff in her opposition (Opp'n 3), the following facts are before the court:

- the Bank has an office in Richmond, within 200 miles of Stepp's home;
- the Bank's office is not open to the public and does not provide mortgage origination or mortgage servicing (personnel there deal with constructive trusts); and
- the Bank did not offer a face-to-face meeting to Stepp or engage in a face-to-face meeting with her prior to foreclosing.

In support of her contention that she has sufficiently alleged the Richmond office is a "branch office," Stepp relies on *Mathews v. PHH Mortg. Corp.*, 724 S.E.2d 196 (Va. 2012). In *Mathews*, the mortgagee operated a loan origination office within 200 miles of the plaintiff, but that office did not service mortgages. Based on these facts, the *Mathews* court considered a section of HUD's website devoted to "frequently asked questions" (FAQ), which contained HUD's then-interpretation of the meaning of branch office.[9] Specifically, HUD's FAQ section explained that, for purposes of the face-to-face requirement, a *servicing* office must be within 200 miles for the requirement to apply; it was not sufficient that a loan origination office was within 200 miles. HUD's reasoning was that the purpose of the meeting was to discuss appropriate loss mitigation options with the mortgagor, which could only be done by personnel adequately trained to do so: servicing personnel. *Id.* at 203, 205.

The *Mathews* court disagreed and gave no deference to the HUD interpretation, finding the term "branch office" unambiguous. The *Mathews* court looked to dictionary definitions and

---

[9] Notably, at some point after *Mathews*—and before the events at issue here—HUD revised that portion of its FAQ section, deleting the portion that defined a "branch office" as a "servicing office." *Rabe v. Wells Fargo Bank. N.A.*, 616 F. App'x 729, 733 (5th Cir. 2015) (noting that the answer was changed at some point subsequent to 2012); Thomas J. Cunningham *et al.*, *The Evolving Interpretation of HUD's Face-to-Face Meeting Requirement*, 68 Consumer Fin. L.Q. Rep. 117, 119 (2014) (noting that, at the time of the article's publication in 2014, the FAQ section had changed and no longer included the "servicing office" interpretation). Now, HUD's answer merely mirrors the regulation; it does not provide a new definition of "branch office" at all. Thus, HUD is no longer limiting its interpretation of the regulation to only "servicing" branches. *See Rabe*, 616 F. App'x at 733.

defined "branch office" as simply "an office in which business is conducted." *Id.* at 204. Relying on that definition, Stepp claims that the Bank "conducts business" in its Richmond office, and thus, it is a "branch office" sufficient to trigger the face-to-face-meeting requirement. The court disagrees.

First of all, as the Bank notes, *Mathews* is a state court interpretation of a federal regulation and thus is not binding on this court. More importantly, though, *Mathews* involved different facts, and its seemingly broad definition makes sense where the office under consideration was still part of the mortgage business. But it makes little sense here, where the purported "branch office" does not offer *any* services related to mortgages and is not even open to the public.

The broad interpretation that Stepp urges would require a corporation (like a large bank) that provides various types of services to offer a face-to-face meeting to a mortgagor if any *bank* business is conducted in any office within 200 miles—irrespective of whether that office provides any mortgaging services and irrespective of whether that office is open to the public. Essentially, Stepp's interpretation substitutes a corporate entity for "mortgagee" and includes as a "mortgagee's branch office" any office where that corporate entity does business. But where— as here—the location's business is completely unrelated to mortgaging functions and also where—as here—the office provides no public access, it defies common sense to conclude that it can constitute a "branch office" for purposes of this regulation. *Cf. United States v. Foster*, 674 F.3d 391, 394 (4th Cir. 2012), *as amended* (Mar. 8, 2012) (denying petition for rehearing en banc) (Wilkinson, J., concurring) (explaining the role of common sense in judicial decision-making and noting that "judges are endowed with brains in the hope and expectation that they will be used to obvious purpose"). As broad as the definition of a "branch office" might be, it

14

cannot be that broad. *Cf.* Thomas J. Cunningham et. al., *The Evolving Interpretation of HUD's Face-to-Face Meeting Requirement*, 68 Consumer Fin. L.Q. Rep. 117, 119 (2014) (criticizing *Mathews* and other decisions not limiting the face-to-face requirement to servicing branches as being inconsistent with the purpose of the face-to-face requirement, negatively impacting mortgage lending, and being "adverse to the public interest").

Instead, the court concludes that the proper interpretation of a "mortgagee's branch office" is one where some business *related to mortgages* is conducted. This interpretation is consistent with the result in *Mathews*, which held that a loan originating office—which obviously still conducts business related to mortgages—could be a "branch office." 724 S.E.2d at 204 ("[E]very type of business and service supplied by the mortgagee, including loan origination, is within its scope.").

This interpretation is also consistent with the definition of a "branch office" in the context of certain banking statutes. Specifically, the Fourth Circuit has recognized that the definition of a "branch office" in 12 U.S.C. § 36(f) must satisfy two requirements. First, the office must be established and operated by the bank, and second, it must transact "branch business by accepting deposits, paying checks, or lending money." *Cades v. H & R Block, Inc.*, 43 F.3d 869, 874 (4th Cir. 1994) (citing *Indep. Bankers Ass'n of N.Y. v. Marine Midland Bank*, 757 F.2d 453, 456–63 (2d Cir.1985)). The definition of "branch office" in the relevant statute in *Cades* specifically defines a "branch" by referring to its functions: deposits received, checks paid, or money lent. 12 U.S.C. § 36(j). Here, there is no comparable definition in the regulation. But applying the same type of analysis, a mortgagee's branch office must be both established and operated by the mortgagee and must transact *mortgage-related* business, whether that be loan origination, servicing, or some other mortgage-related function.

Under a definition of a branch office that requires an office engaging in some type of mortgage-related business, it is clear that the Bank's Richmond branch does not qualify. That office is a separate office, not open to the public, and does not perform mortgage-related functions. Stepp has not alleged that it performs any mortgage-related functions, nor taken issue with the Bank's assertion that it does not.

Moreover, neither *Mathews* nor any other case cited by Stepp supports the broad proposition she advances. In particular, she has pointed to no other case in which an office that does not engage in any business related to mortgages or that is not open to the public has been held to be a "branch office" under this regulation. The court's conclusion also finds some support in *Peralta v. U.S. Bank*, No. 17-cv-263, 2018 WL 2971119, at *1–2 (D.R.I. April 17, 2018). There, the court held that an office of a U.S. Bank subsidiary, which did not originate, underwrite, or service any mortgage loans, was not a "branch office" under 24 C.F.R. § 203.604. *Id.*

For all of these reasons, the court concludes that the Bank, as a mortgagee, does not have a "branch office" within 200 miles of Stepp's home. It is thus exempt from the requirement to offer or conduct a face-to-face meeting. Stepp's breach of contract claim, which is premised on the Bank's failure to abide by that requirement, therefore fails to state a claim for which relief can be granted. Accordingly, the defendants' motions to dismiss will be granted.

## D. Plaintiff's Motion to Amend

In addition to opposing the motions to dismiss, Stepp also has filed an alternative motion for leave to file a second amended complaint (Dkt. No. 32). She styled this as an alternative motion in the event that the court were to grant the motions to dismiss. But the proposed amendments would not change the court's analysis as to the "branch office" issue; to the extent they affect her claims at all, they affect only the standing issue. Specifically, the primary

changes from the amended complaint to the proposed second amended complaint are that it (1) modified the paragraphs concerning venue; (2) modified some of the descriptions of the terms of the deed of trust, including omitting references to acceleration of the note; (2) added a paragraph addressing the purported foreclosure; and (3) added a paragraph stating that Stepp filed for bankruptcy and that the foreclosure occurred post-petition.  It also began to add language in the section titled "Conclusion," but left that section incomplete.  (*Compare* Dkt. No. 3 *with* Dkt. No. 32-1.)  Because these changes affect only the standing issue and the court has already ruled in Stepp's favor as to that issue, and because none of these amendments would alter the court's "branch office" analysis, which is the basis for granting the motions to dismiss, the court will deny as moot the motion to amend.

III.  CONCLUSION

For the foregoing reasons, the court will grant defendants' motions to dismiss (Dkt. Nos. 5, 7), and it will deny as moot plaintiff's alternative motion for leave to file a second amended complaint (Dkt. No. 32).  An appropriate order will be entered.

Entered: December 18, 2018.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge